1  BRADFORD J. AXEL (WSBA #29269)
   KRISTA L. NELSON (WSBA #45454)
2  ERIKA HARTLIEP (WSBA #33277)
   STOKES LAWRENCE, P.S.
3  1420 Fifth Avenue, Suite 3000
   Seattle, Washington 98101-2393
4  (206) 626-6000

5

6                UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF WASHINGTON
7

8  THE DOLSEN COMPANIES, a
   Washington Corporation, COW PALACE,        Case No.:  1:16-cv-3141 TOR
   LLC, a Washington Limited Liability
9  Company, THREE D PROPERTIES, LLC,          PLAINTIFFS' COMBINED
   a Washington Limited Liability Company,    RESPONSE TO 1) DEFENDANTS
10                                            QBE AND UNIGARD'S MOTION
                  Plaintiffs,                 FOR SUMMARY JUDGMENT, ECF
11                                            NO. 72, AND 2) MOTION FOR
          v.                                  SUMMARY JUDGMENT BY
12                                            DEFENDANTS BEDIVERE
   BEDIVERE INSURANCE COMPANY                 INSURANCE CO. AND ARMOUR
13 f/k/a ONEBEACON, A Pennsylvania            RISK MANAGEMENT, ECF NO. 76
   Corporation, ARMOUR RISK
14 MANAGEMENT, INC., a Pennsylvania           AND
   Corporation, QBE INSURANCE
15 CORPORATION, a Pennsylvania                PLAINTIFFS' REQUEST FOR
   corporation, UNIGARD INSURANCE            FEDERAL RULE OF CIVIL
16 COMPANY, a Washington corporation,        PROCEDURE 56(d)
                                             CONTINUANCE
17               Defendants.
                                             December 19, 2017
18                                           With Oral Argument
                                             1:30 p.m.
19                                           Spokane Courtroom 902

20

21

PLAINTIFFS' COMBINED RESPONSE TO THE INSURERS'          **STOKES LAWRENCE, P.S.**
SUMMARY-JUDGMENT MOTIONS ON REMAINING CLAIMS            1420 FIFTH AVENUE, SUITE 3000
46133-013 \ 2306198.docx                               SEATTLE, WASHINGTON 98101-2393
                                                       (206) 626-6000

1  By forcing Cow Palace to resolve coverage issues through expensive and lengthy

2  litigation, the Insurers breached their obligations under Washington's environmental-

3  claims-handling regulations, resulting in a *per se* Consumer Protection Act violation and

4  a violation of the doctrine of good faith and fair dealing. The Insurers[1] presented no

5  evidence that they advised Cow Palace[2] of its right to have coverage issues 1) considered

6  under the public policies articulated in WAC 284-30-900 *et seq.* or 2) resolved or

7  narrowed by a neutral mediator rather than in costly and time-consuming litigation. The

8  Court should either deny the Insurers' summary-judgment motions or stay the motions to

9  permit Cow Palace to conduct additional discovery.

## I.  RULE 56(d) CONTINUANCE REQUEST

11  Under Federal Rule of Civil Procedure 56(d), Cow Palace requests additional time

12  to respond to the Insurers' summary-judgment motions. A Rule 56(d) continuance is

13  appropriate if 1) the requesting party sets forth in a declaration the specific facts it hopes

14  to elicit from further discovery, 2) the source for the sought-after facts exist, and 3) the

15  sought-after facts are essential to oppose summary-judgment. *See Hell Yeah Cycles v.*

16  *Ohio Sec. Ins. Co.*, 16 F. Supp. 3d 1224, 1228-29 (E.D. Wash 2014).

17  As set forth in the Declaration of Bradford Axel, Cow Palace must conduct

18  additional discovery to fully support its opposition to the summary-judgment motions.

---

[1] "Insurers" collectively refers to all Defendants.

[2] "Cow Palace" collectively refers to all Plaintiffs.

PLAINTIFFS' COMBINED RESPONSE TO THE INSURERS'
SUMMARY-JUDGMENT MOTIONS ON REMAINING CLAIMS- 1
46133-013 \ 2306198.docx

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

As the Court is aware, the parties agreed to stay discovery in June 2017 pending the Court's ruling on whether the pollution exclusion applied to the CARE Litigation claims.[3] In September 2017, the Court determined the Insurers had no duty to defend or indemnify Cow Palace in the CARE Litigation because the claims involved excluded pollutants and therefore the Court granted the Insurers' summary-judgment motions.[4]

Before the discovery stay, Cow Palace served a First Set of Interrogatories and Request for Production on each of the Insurers.[5] The Insurers initially answered in March and April 2017 and then supplemented their responses in May 2017. The Insurers withheld significant portions of their claim files on the basis of the attorney-client privilege and the work-product doctrine.[6] Cow Palace's Motion to Compel Production of Claim Files is pending and asks the Court to order the Insurers to produce the withheld claim files to Cow Palace, or alternatively to the Court for an in camera review, so that information relating to the Insurers' claim handling may be reviewed by Cow Palace.[7] These sought-after claim files exist and will reflect whether the Insurers acted in bad faith and whether they considered the public policies articulated in Washington's

---

[3] ECF No. 33.

[4] ECF No. 70.

[5] ECF No. 82, Exs. A-C.

[6] *Id.*, Exs. D & E.

[7] ECF No. 81.

PLAINTIFFS' COMBINED RESPONSE TO THE INSURERS'
SUMMARY-JUDGMENT MOTIONS ON REMAINING CLAIMS- 2
46133-013 \ 2306198.docx

environmental-claims-handling regulations and the mediation program established therein. Cow Palace must also conduct additional discovery, including potentially deposing the claim handlers, in regard to whether the Insurers recognized and carried out their obligations under these environmental-claims-handling regulations and otherwise acted in good faith.

If the Court does not find that genuine issues of material fact exist on the present record, Cow Palace requests the Court grant Cow Palace's Rule 56(d) continuance request to permit full discovery.

## II.  SUMMARY-JUDGMENT OPPOSITION

Cow Palace responds to the extent that it can on the present record to the Insurers' summary-judgment motions. Based on the Court's coverage rulings, Cow Palace concedes it may no longer pursue either its IFCA claim or the coverage-dependent portions of its Consumer Protection Act (CPA) and good faith and fair dealing ("bad faith") claims. However, genuine issues of material fact exist as to the non-coverage-dependent CPA and bad-faith claims, which are rooted on Washington's environmental-claims-handling regulations.

PLAINTIFFS' COMBINED RESPONSE TO THE INSURERS'
SUMMARY-JUDGMENT MOTIONS ON REMAINING CLAIMS- 3
46133-013 \ 2306198.docx

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

## A.    Facts

The Agripolicies issued to Cow Palace by the Insurers were general liability insurance policies.[8] These farm commercial general liability policies provided coverage for bodily injury and property damage.[9]

Cow Palace tendered the CARE Litigation claims to the respective Insurers under each of the at-issue Agripolicies.[10] The Insurers denied coverage, contending the manure allegedly released from Cow Palace's storage lagoons and fields were pollutants and therefore any liability for bodily injury or property damage was excluded under the Agripolicies' absolute pollution exclusion.[11]

In this regard, QBE's initial denial letter[12] stated:

---

[8] ECF No. 49, Exs. A-K

[9] *Id.*; Brad Axel's Decl. in Support of 1) Plaintiffs' Combined Response to the Insurers' Summary-Judgment Motions and 2) Plaintiffs' Motion for Federal Rule of Civil Procedure 56(d) Continuance ("Axel Decl."), ECF No. __, Ex. A.

[10] ECF No. 49, Exs. M & N.

[11] *Id.*

[12] ECF No. 74, Ex. I.

PLAINTIFFS' COMBINED RESPONSE TO THE INSURERS'
SUMMARY-JUDGMENT MOTIONS ON REMAINING CLAIMS- 4
46133-013 \ 2306198.docx

> The pollution exclusion eliminates a duty to defend and indemnify Cow Palace in relation to the claims by the Plaintiffs. For example, to the extent that the Plaintiffs seek "damages" because of "bodily injury" or "property damage," the alleged "bodily injury" or "property damage" arose out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants falling within subsections (1)(a) through (1)(d) of the exclusion. In addition, subsection (2) of the exclusion eliminates a duty to defend and indemnify. For example, the Plaintiffs demand and request, and seek an order requiring, Cow Palace to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants."

And One Beacon's initial denial letter[13] stated:

> The manure and resulting nitrate that contaminated the surface and groundwater at issue in the *CARE* Lawsuit are "pollutants" as defined in the above exclusion. These pollutants were at, and the resulting damage is from, Cow Palace's dairy farm. The manure was stored and treated by Cow Palace on its premises. . . .
>
> If the allegations of the *CARE* Lawsuit triggered the insuring agreement of the FARM LIABILITY FORM, all damages sought in the lawsuit would be excluded from coverage under the pollution exclusion.

Cow Palace asked the Insurers to reconsider their denial, submitting that Washington law was unclear as to whether the policies' pollution exclusion applied to harm resulting from the negligent handling of manure.[14] Cow Palace also served the Insurers with notice of intent to sue under the Insurance Fair Conduct Act.[15] The Insurers continued to rely on the pollution exclusion to deny coverage and a defense.[16]

---

[13] ECF No. 79, Ex. 1.

[14] ECF No. 74, Exs. J, K, L, & N; ECF No. 79, Ex. 2.

[15] ECF No. 74, Ex. O; ECF No. 89, Ex. 3.

PLAINTIFFS' COMBINED RESPONSE TO THE INSURERS'
SUMMARY-JUDGMENT MOTIONS ON REMAINING CLAIMS- 5
46133-013 \ 2306198.docx

Although on notice of a dispute regarding the applicability of a policy exclusion,[17] the Insurers did not advise Cow Palace of its right under Washington's environmental-claims-handling regulations to request that a mediator, rather than a court, resolve or narrow coverage issues. In not one of the Insurers' denial letters or other communications to Cow Palace did the Insurers advise Cow Palace that it had the right to request that the Insurers engage in good faith mediation to resolve or narrow coverage or defense disputes, rather than be restricted to challenging the Insurers' self-interested coverage and defense determinations in court. This is so even though QBE recognized in March 2016 that the CARE Litigation claims "may qualify for the environmental unit" and the same day an internal Environmental Mass Tort and Construction Defect Referral notice was generated.[18] The portions of the claims file disclosed to Cow Palace do not reflect that the Insurers considered the public policies articulated in Washington's environmental-claims-handling regulations, nor that the Insurers advised Cow Palace of its right to have coverage issues narrowed or resolved by a neutral third-party mediator.

For instance, even after being notified that 1) Cow Palace disagreed with the Insurers' determination that manure was a pollutant and the claim was excluded by the absolute pollution exclusion and 2) other insurance companies were not treating manure

---

[16] ECF No. 74, Exs. M & P; ECF No. 39, Ex. 12 at 3-4.

[17] ECF Nos. 49, Exs. M & N; Axel Decl., ECF No. __, Ex. B.

[18] Axel Decl., ECF No. __, Exs. C & D.

PLAINTIFFS' COMBINED RESPONSE TO THE INSURERS'
SUMMARY-JUDGMENT MOTIONS ON REMAINING CLAIMS- 6
46133-013 \ 2306198.docx

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

as an excluded pollutant, there is no reference in the disclosed portions of the claim files to Washington's environmental-claims-handling regulations or the use of mediation to narrow or resolve the disputed coverage issues. Rather, the Insurers continued to rely on their own self-interested coverage decision, as is reflected in a November 2015 email[19] sent by QBE's Senior Claims Technical Specialist in November:

> Joshua, the difference between QBE's coverage opinion and Nationwide's and MOE's coverage opinion primarily comes down to defining whether cow manure is defined as a pollutant. Washington courts have not provided a ruling on that question. The majority of opinions from around to country tend to favor manure as being defined as a pollutant. Consequently myself and coverage counsel believe we're justified in issuing the denial pursuant to the presence of the absolute pollution exclusion contained within the policy.

Not wanting to rely on the Insurers' self-interested coverage and defense decisions, Cow Palace filed this lawsuit to have the questions of coverage and defense resolved by a neutral entity. In defending the CARE Litigation and then pursuing this lawsuit, Cow Palace has incurred substantial attorney's fees and costs. Furthermore, because issues related to the CARE Litigation and coverage and defense for such have continued, Cow Palace continued to be subject to press relating to the CARE Litigation and its manure-management practices.[20]

## B.    Summary-Judgment Standard

The Insurers are only entitled to summary judgment if "there is no genuine dispute as to any material fact" and they are "entitled to judgment as a matter of law." Fed. R.

---

[19] Axel Decl., ECF No. __, Ex. E.

[20] Axel Decl., ECF No. __, Ex. F.

PLAINTIFFS' COMBINED RESPONSE TO THE INSURERS'
SUMMARY-JUDGMENT MOTIONS ON REMAINING CLAIMS- 7
46133-013 \ 2306198.docx

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

Civ. P. 56(a). A fact is "material if it might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* As the moving party, the Insurers bear the "burden of establishing the nonexistence of a 'genuine issue.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "This burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party." *Id.*

## C.    Governing Law

Washington law governs Cow Palace's claims under Washington's Insurance Fair Conduct Act, Consumer Protection Act, and bad-faith doctrine.

## D.    Insurance Fair Conduct Act (IFCA)

Given the Court's coverage ruling, Cow Palace concedes it is unable to pursue an IFCA claim. RCW 48.30.015(1)[21] requires that the insured establish it was

---

[21] IFCA provides, in pertinent part:

> Any first party claimant to a policy of insurance who is unreasonably denied a claim for coverage or payment of benefits by an insurer may bring an action in the superior court of this state to recover the actual damages sustained, together with the costs of the action, including reasonable attorneys' fees and litigation costs, as set forth in subsection (3) of this section.

RCW 48.30.015(1).

PLAINTIFFS' COMBINED RESPONSE TO THE INSURERS'
SUMMARY-JUDGMENT MOTIONS ON REMAINING CLAIMS- 8
46133-013 \ 2306198.docx

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

"unreasonably denied a claim for coverage or payment of benefits."[22] The impact of the Court's coverage ruling on Cow Palace's IFCA claim underscores the need for the Court to grant Cow Palace's Motion for Judgment on Ruling Pursuant to Fed. R. Civ. P. 54(b), ECF No. 71. Judicial efficiency and fairness necessitate that the Ninth Circuit review the Court's coverage ruling now, rather than following additional discovery, motions, and trial on the remaining CPA and bad-faith claims. An interlocutory appeal ensures that all claims are adjudicated based on the correct coverage ruling, especially since the coverage ruling results in Cow Palace's concession of its IFCA claim.

## E.    Consumer Protection Act (CPA)

Cow Palace agrees that the elements for a CPA claim are (1) an unfair or deceptive act or practice, (2) occurring in the conduct of trade or commerce, (3) which impacts the public interest, (4) an injury to business or property, and (5) a causal link between the injury and the deceptive act or practice.[23] Because this is an insurance-related matter, the second (trade/commerce) and third (public interest) factors are

---

[22] *See Perez-Crisantos v. State Farm Fire & Cas. Co.*, 187 Wn.2d 669, 682-83 (2017) (ruling that a violation of an insurance WAC by itself was insufficient to bring an IFCA action).

[23] *Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780 (1986).

PLAINTIFFS' COMBINED RESPONSE TO THE INSURERS'
SUMMARY-JUDGMENT MOTIONS ON REMAINING CLAIMS- 9
46133-013 \ 2306108.docx

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

satisfied.[24] Therefore, the focus is on the three remaining CPA factors: an unfair or deceptive act or practice that injured Cow Palace. There are, or will be following further discovery, genuine issues of material fact as to these elements.

## 1.    Unfair or Deceptive Act or Practice

Given the Court's coverage ruling, Cow Palace agrees it is unable to pursue its CPA claim alleging that the Insurers engaged in unfair or deceptive acts or practices by failing to narrowly construe the Agripolicies' absolute pollution exclusion under Washington's unclear insurance law and thereby provide coverage and a defense for claims relating to manure storage and application practices.[25]

Yet, Cow Palace's other CPA claims survive.[26] The Insurers' steadfast position that the CARE Litigation involved "pollutants" enables Cow Palace to pursue its CPA claim asserting that the Insurers engaged in an unfair or deceptive act or practice by

---

[24] *See Hell Yeah Cycles*, 16 F. Supp. 3d at 1231 (recognizing the second and third CPA factors are satisfied if the action involves insurance contracts).

[25] An interlocutory review of the Court's coverage ruling by the Ninth Circuit will ensure the coverage-dependent CPA claims are not improperly conceded by Cow Palace.

[26] *See St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 165 Wn.2d 122, 134 (2008) (recognizing that insured can bring a CPA claim even if there is no duty to settle, indemnify, or defend).

PLAINTIFFS' COMBINED RESPONSE TO THE INSURERS'
SUMMARY-JUDGMENT MOTIONS ON REMAINING CLAIMS- 10
46133-013 \ 2306198.docx

failing to honor Washington's environmental-claims-handling insurance regulations. If the pollution exclusion applies (a position the Insurers have maintained from their initial denial letters), then the Insurers should have recognized they had an obligation to comply with Washington's environmental-claims-handling regulations, WACs 284-30-900 thru -940. By pursuing CPA claims based on these environmental-claims-handling regulations, Cow Palace is not deviating from its position that the pollution exclusion does not preclude coverage or a defense for the CARE Litigation claims. Rather Cow Palace contends the Insurers failed to abide by the very WACs that they should have recognized governed their handling of a claim involving a purported pollutant.

In 1995, the Washington State Insurance Commission adopted these environmental-claims-handling regulations, which were contested by the insurance industry because they imposed additional duties on insurance companies handling environmental claims against a Washington insured.[27] WAC 284-30-900, -940. The regulations define "environmental claim" as "a claim for defense or indemnity submitted under a general liability insurance policy by an insured facing, or allegedly facing,

---

[27] *See* Thomas Jones, Adrienne Millican, & Kristopher Kinkade, *Washington State's Insurance Regulations for Environmental Claims: An Overview of Key Provisions and Legal Issues*, 9 Envtl. Cl. J. 3 (Spring 1997); William DiBenedetto, *Insurers Weigh Lawsuit Over Wash. Cleanup Rules*, JOC.com (April 10, 1995), https://www.joc.com/insurers-weigh-lawsuit-over-wash-cleanup-rules_19950410.html.

PLAINTIFFS' COMBINED RESPONSE TO THE INSURERS'
SUMMARY-JUDGMENT MOTIONS ON REMAINING CLAIMS- 11
46133-013 \ 2306198.docx

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

potential liability for bodily injury or property damage to others arising from a discharge of pollutants into land, air, or water." WAC 284-30-910(1).

Per the Insurers' continued self-interested position, an environmental claim was involved. Cow Palace submitted a potential liability claim for bodily injury or property damage to others arising from the discharge of manure onto land and water under its general liability insurance policies. The Insurers consistently maintained that manure was a pollutant. Having consistently maintained that Cow Palace tendered (and retendered) a claim involving a pollutant, the Insurers cannot now contest that an "environmental claim" was tendered under a "general liability insurance policy,"[28] as the Agripolicies provide coverage to Cow Palace for its legal obligations for bodily injury or property damage to others.

Thus, these environmental-claims-handling regulations governed the Insurers' handling of Cow Palace's tendered claims. But there is no evidence the Insurers considered these regulations, the public policies served by these regulations, or the mediation program established therein. Specifically, the regulations:

---

[28] The regulations define "general liability insurance policy" broadly: a contract of insurance that provides coverage for the legal obligations of an insured for bodily injury or property damage to others" and includes "comprehensive general liability insurance policies." WAC 284-30-910(2).

PLAINTIFFS' COMBINED RESPONSE TO THE INSURERS'
SUMMARY-JUDGMENT MOTIONS ON REMAINING CLAIMS- 12
46133-013 \ 2306198.docx

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

- "provide minimum standards for the conduct of insureds and insurers for presenting and resolving environmental claims with the goal of facilitating the fair, principled, and efficient resolution of environmental claims without resort to unnecessary, time-consuming, and expensive litigation," WAC 284-30-900(4);

- encourage insurers "to participate in a mediation program in order to achieve a mutually acceptable, expeditious resolution of environmental claims without resort to costly and lengthy litigation," WAC 284-30-900(3); and

- recognize "Washington has a substantial public interest in the timely, efficient, and appropriate resolution of environmental claims involving the liability of insureds at polluted sites in this state. This interest is based on practices favoring good faith and fair dealing in insurance matters and on the state's broader health and safety interest in a clean environment," WAC 284-30-900(1). [29]

---

[29] *See Or. Mut. Ins. Co. v. Seattle Collision Ctr.*, No. C08-1670JLR, 2009 WL 3067036 (W.D. Wash. Sept. 18, 2009) (finding genuine issues of material fact as to the CPA and bad-faith claims that were distinct from coverage issues), *affirmed on other grounds by* 403 Fed. Appx. 249 (9th Cir. 2010); *Teck Metals, Ltd. v. Certain Underwriters at Lloyd's, London*, 735 F. Supp. 2d 1260 (E.D. Wash. 2010) (looking to WAC 284-30-930 to help analyze whether response costs incurred under an agreement with the EPA constitute damages or defense costs); *Unigard Ins. Co. v. Leven*, 97 Wn. App. 417 (1999) (acknowledging the court found that costs to investigate contamination constitute defenses costs under WAC 284-30-930(3)).

PLAINTIFFS' COMBINED RESPONSE TO THE INSURERS'
SUMMARY-JUDGMENT MOTIONS ON REMAINING CLAIMS- 13
46133-013 \ 2306198.docx

To achieve these regulatory aims, insurers are required to both commence timely investigations[30] and prioritize mediation of coverage disputes. In regard to mediating coverage disputes by a neutral mediator, the regulations state:

> The commissioner has found and hereby defines it to be an unfair act or practice or an unfair method of competition for an insurer to fail to participate in good faith in nonbinding mediation requested by an insured . . . regarding coverage for an environmental claim.
>
> (1) The insured may request in writing that the insurer participate in nonbinding mediation.
>
> (2) Upon request from an insured for nonbinding mediation, an insurer shall provide an insured with information concerning an environmental claim mediation program. The information shall include, but need not be limited to, a description of how an insured can efficiently commence a mediation program.
>
> (3) The purposes of mediation shall include, but need not be limited to, the following:
>
>> (a) To assist the parties in resolving disputes . . . concerning the relevant terms, conditions, and exclusions of the policy;
>>
>> (b) To determine whether the entire claim, or a portion thereof, can be settled by agreement of the parties;
>>
>> (c) If the claim cannot be settled, to determine whether one or more issues can be resolved to the satisfaction of the parties; or
>>
>> (d) To discuss any other methods of streamlining or reducing the cost of litigation.

WAC 284-30-940.

---

[30] WAC 294-30-930 (recognizing that a failure to commence an investigation with 15 days of tender can constitute an unfair practice).

PLAINTIFFS' COMBINED RESPONSE TO THE INSURERS'
SUMMARY-JUDGMENT MOTIONS ON REMAINING CLAIMS- 14
46133-013 \ 2306198.docx

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

Cow Palace's remaining CPA claims focus on 1) whether the Insurers' investigation was timely and adequate under WAC 284-30-930; 2) whether the Insurers advised Cow Palace that it had a right to request that the Insurers participate in good faith nonbinding mediation to resolve or narrow the contested coverage and defense issues under WAC 284-30-900 and WAC 284-30-940; and 3) whether the Insurers recognized they had a duty to fully consider the substantial public interest of resolving or narrowing environmental-claims disputes without forcing insureds to resort to costly and prolonged litigation, thereby reducing the funds available to clean up the claimed contamination, and whether they satisfied this duty under WAC 284-30-900 and WAC 284-30-940.

In support of their summary-judgment motions, the Insurers fail to produce evidence that they complied with these environmental-claims-handling regulations, or even considered them. Specifically, the Insurers fail to produce evidence that their denial letters and other correspondence advised Cow Palace of its right to request mediation to resolve or narrow coverage issues. While the limited claim-file material disclosed thus far indicates the Insurers opened claim files fairly soon after receiving notice of the claim and that QBE referred the claim to its environmental unit, the disclosed material does not detail whether the investigation included considering the Insurer's requirements under these environmental-claims-handling regulations, such as mediating coverage

PLAINTIFFS' COMBINED RESPONSE TO THE INSURERS'
SUMMARY-JUDGMENT MOTIONS ON REMAINING CLAIMS- 15
46133-013 \ 2306198.docx

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

disputes in order to increase the funds available to clean up the claimed environmental damage.

Cow Palace must be able to conduct discovery into these matters. It is premature for the Court to conclude in the Insurers' favor that no violation of WAC 284-30-900, WAC 284-30-930, or WAC 284-30-940 occurred. Cow Palace believes, after full discovery, the record will establish the Insurers failed to comply with these environmental-claims-handling regulations. Such a failure constitutes an unfair or deceptive act or practice.[31]

The Insurers may argue the environmental-claims-handling regulations do not require them to disclose to their Washington insureds that they have a right to "request in writing that the insurer participate in nonbinding mediation" "concerning the relevant terms, conditions, and *exclusions* of the policy." WAC 284-30-940(1), (3) (emphasis added). Such a position would fail to honor the stated intent of these regulations, which is to "provide *minimum standards* for the conduct of insureds and insurers for presenting and resolving environmental claims with the goal of facilitating the fair, principled, and efficient resolution of environmental claims without resort to unnecessary, time-

---

[31] If there is ultimately no dispute the Insurers failed to comply with the environmental-claims-handling regulations, then it is a question of law for this Court to decide whether the Insurers' failures constitute unfair or deceptive acts and practices. *See Leingang v. Pierce Cnty.*, 131 Wn.2d 133, 150 (1997).

PLAINTIFFS' COMBINED RESPONSE TO THE INSURERS'
SUMMARY-JUDGMENT MOTIONS ON REMAINING CLAIMS- 16
46133-013 \ 2306198.docx

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

consuming, and expensive litigation." WAC 294-30-900(4) (emphasis added). If these regulations are to have any effect, once on notice of a dispute involving an absolute pollution exclusion, an insurer must advise its insured of its ability to request that coverage and defense issues be resolved by a neutral mediator. Narrowly reading the environmental-mediation provisions would also violate the long-standing duty of an insurer to deal fairly with an insured by giving equal consideration in all matters to the insured's interests as well as its own."[32]

The Insurers may also argue their court-deemed reasonable basis for denial of coverage bars any CPA claim based on these environmental-claims-handling regulations. Again, such an argument fails to honor the stated intent of the Washington State Insurance Commission, which was to permit insureds to request mediation "concerning the relevant terms, conditions, and *exclusions* of the policy." WAC 284-30-940(3). That an insured can seek to mediate the question of whether a policy exclusion

---

[32] *Van Noy v. State Farm Mut. Auto. Ins. Co.*, 142 Wn.2d 784, 793-94 (2001); *see also Anderson v. State Farm Mut. Ins. Co.*, 101 Wn. App. 323, 331 (2000) (recognizing that insurer's failure to disclose potential coverage is actionable as a matter of law as an unfair insurance claims practice under the CPA); WAC 284-30-350 (prohibiting an insurer from failing to "fully disclose to first party claimants all pertinent benefits, coverages or other provisions of an insurance policy or insurance contract under which a claim is presented").

---

PLAINTIFFS' COMBINED RESPONSE TO THE INSURERS' SUMMARY-JUDGMENT MOTIONS ON REMAINING CLAIMS- 17
46133-013 \ 2306198.docx

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

applies to preclude coverage or a defense, identifies the importance of an insurer being forthright about the insured's ability to request mediation to obtain a neutral decision on the applicability of a policy exclusion. An insurance company must advise its insured facing an environmental claim of its ability to choose what forum to resolve a dispute about a policy exclusion: mediation or litigation. The Insurers failed to inform Cow Palace of this choice, forcing Cow Palace to resort to expensive and lengthy litigation, thereby violating the very purpose of the environmental-claim-handling regulations. That the Court ultimately agreed with the Insurers' coverage and defense decisions should not shield the Insurers from CPA liability for failing to advise its insured of the opportunity to have coverage and defense issues resolved or narrowed by a mediator rather than by a court, particularly when the Insurance Commission has recognized that a mediator can resolve or narrow policy disputes quicker and cheaper than litigation.

The Insurers fail to present any evidence that they complied with these environmental-claims-handling regulations, such as by notifying Cow Palace of the right to request mediation or by considering Washington's substantial interest of utilizing available funds (of both the insured and the insurer) to clean up the environment rather than to spend such funds to obtain a neutral ruling regarding policy disputes. Thus, there are genuine issues of material fact as to whether the Insurers violated the environmental-

PLAINTIFFS' COMBINED RESPONSE TO THE INSURERS'
SUMMARY-JUDGMENT MOTIONS ON REMAINING CLAIMS- 18
46133-013 \ 2306198.docx

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

insurance regulations and thereby committed per se violations of the CPA.[33] Plus, without the full claim files, it is extremely difficult for Cow Palace to appreciate what "investigation" occurred and whether the investigation was adequate and timely.

### 2.    Caused Harm

Turning to the challenged caused harm factors, the CPA's injury requirement is met upon proof the plaintiff's "property interest or money is diminished because of the unlawful conduct even if the expenses caused by the statutory violation are minimal."[34] To satisfy the injury requirement, damages need not be quantified.[35] Further, "[p]ecuniary losses occasioned by inconvenience" constitute an injury and may be recovered as damages.[36] This is a low standard.

---

[33] *See* 35 Wash. Prac., Washington Insurance Law & Litig. 20:17, Environmental insurance regulations; *see e.g., Ind'l Indem. Co. of the Nw. v. Kallevig*, 114 Wn.2d 907, 923 (1990) (recognizing that a violation of certain insurance regulations constitute a *per se* unfair trade practice).

[34] *Mason v. Mortg. Am., Inc.*, 114 Wn.2d 842, 854 (1990); *Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*, 64 Wn. App. 553, 563 (1992) (recognizing the injury need not be significant).

[35] *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 57-58 (2009).

[36] *Id.*

PLAINTIFFS' COMBINED RESPONSE TO THE INSURERS'
SUMMARY-JUDGMENT MOTIONS ON REMAINING CLAIMS- 19
46133-013 \ 2306198.docx

If the Insurers had advised Cow Palace of its right to request that the Insurers participate in good-faith nonbinding mediation wherein the mediator would resolve or narrow coverage issues, this lawsuit, along with its costly and time-consuming initial disclosures, discovery, and motions practice, may have been unnecessary. Cow Palace retained counsel to help contest the Insurers' coverage determination. Counsel prepared retender letters, prepared the IFCA notice, and then brought this lawsuit. During this lengthy process, Cow Palace incurred costs and its personnel have put time and attention to these matters. Plus, because Cow Palace was required to resort to litigation to get a coverage determination from a neutral entity, the wrongdoings alleged in the CARE Litigation have "lived on" in the press thereby injuring Cow Palace's reputation and good will.[37]

The Insurers may argue that litigation may still have ensured despite mediation. The Insurers cannot benefit from this speculation, when it was their own failure to advise Cow Palace of the mediation program established by these regulations that prevented Cow Palace from seeking a coverage resolution through mediation. The difficulty in establishing the extent of harm caused by an insurer's own wrongdoings is the reason Washington courts have adopted a presumption of harm when an insured has

---

[37] *Wash. St. Phys. Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 316 (1993) (recognizing damage to business reputation and loss of goodwill are compensable damages under the CPA).

PLAINTIFFS' COMBINED RESPONSE TO THE INSURERS' SUMMARY-JUDGMENT MOTIONS ON REMAINING CLAIMS- 20
46133-013 \ 2306198.docx

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

1    established that the insurer committed bad faith during the handling of the claim. This

2    same presumption should apply equally to CPA claims.

3        Washington Supreme Court cases discussing this presumption of harm are *Safeco*

4    *Insurance Co. of America v. Butler*, 118 Wn.2d 383 (1992); *Coventry Associates v. Am.*

5    *States Ins. Co.,* 136 Wn.2d 269, 277 (1998); and *St. Paul Fire & Marine Insurance Co.*

6    *v. Onvia*, 165 Wn.2d 122 (2008).[38] In *Safeco Insurance Co.*, the insurer defended its

7    insured under a reservation of rights, with the insured ultimately settling with the third-

8    party claimant. A bad-faith action was brought, alleging that Safeco mishandled the

9    claim. In addressing the question of what proof the insured must present in regard to

10   harm resulting from the insurer's bad-faith claim handling, the Washington Supreme

11   Court decided that a rebuttable presumption of harm applies once the insured establishes

12   bad faith. This "shifting of the burden ameliorates the difficulty insureds have in

13   showing that a particular act resulted in prejudice" and "recognizes the fact that loss of

14   control of the case is in itself prejudicial to the insured." 118 Wn.2d at 392.

15       In *Coventry*, the Washington Supreme Court "decline[d] to hold [that] in the first

16   party context a rebuttable presumption of harm exists once an insured acts in bad faith,"

17   and in contrasting the facts before it from *Safeco Insurance Co. of America* highlighted

18   that the insurer owes a heightened duty of good faith in the third-party reservation-of-

---

19   [38] *See also Kirk v. Mt. Airy Ins. Co.*, 134 Wn.2d 558 (1998) (applying *Butler*'s

20     presumption of harm in the context of an assumed breach of the duty to defend).

21

PLAINTIFFS' COMBINED RESPONSE TO THE INSURERS'
SUMMARY-JUDGMENT MOTIONS ON REMAINING CLAIMS- 21
46133-013 \ 2306198.docx

rights context. 136 Wn.2d at 282. Therefore, in *Coventry*, the court held that a first-party insured must satisfy the causation requirement by showing it incurred expenses as a result of the insurer's bad-faith claims handling.

In *St. Paul Fire and Marine Insurance Co.*, the Washington Supreme Court was presented with certified questions, including whether a presumption of harm should apply in a bad-faith (or CPA) action once the insurer establishes that the insured committed procedural bad faith by violating a WAC and where it has been determined no duty to defend was owed. The insured alleged the insurer failed to timely and adequately act upon the notice of claim and tender of defense and investigate the tendered claim. The court compared the situation before it to that in *Coventry*, being that a reservation of rights or failure to defend in any capacity was not at issue since the district court had ruled that the insurer had no duty to defend (a ruling the Washington Supreme Court was not asked to review). Therefore the Washington Supreme Court relied on *Coventry* to determine that no rebuttable presumption of harm applied and the insured was required to prove actual harm resulting from the bad faith.

Cow Palace recognizes based on this Washington case law that, if the evidence ultimately establishes merely a delayed or inadequate investigation of the claim by the Insurers, that Cow Palace must prove actual harm resulting from that delayed or

PLAINTIFFS' COMBINED RESPONSE TO THE INSURERS'
SUMMARY-JUDGMENT MOTIONS ON REMAINING CLAIMS- 22
46133-013 \ 2306198.docx

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

inadequate investigation.[39] However, Cow Palace submits that the rationales articulated in *Safeco Insurance Co. of America* necessitate applying the presumption of harm when a violation of the environmental-claims-regulations relating to mediation is proven. By losing out on the opportunity to have a mediator resolve or narrow coverage and defense disputes, "[t]he course cannot be rerun, no amount of evidence will prove what might have occurred if a different route had been taken. By its own actions, [the insurer] irrevocably fixed the course of events concerning the law suit." *Safeco Ins. Co. of Am.*, 118 Wn.2d at 391 (quoting *Transam. Ins. Grp. v. Chubb & Son, Inc.*, 16 Wn. App. 247, 252 (1976)). Thus, while the Court has determined that the Insurers did not have a duty to provide coverage or a defense, the very nature of the harm resulting from the breach of the mediation-related environmental-claims-handling regulations, aligns this case with *Safeco Insurance Co. of America*, and differentiates it from *Coventry* and *St. Paul Fire and Marine Ins. Co.*

Regardless of whether the Court determines that a presumption of harm applies or that Plaintiffs must prove harm resulting from the CPA violation, genuine issues of material fact exist as to whether Cow Palace suffered injury resulting from the Insurers' failures under these environmental-claims-handling regulations. The jury is best suited

---

[39] The impact of the Court's coverage ruling on the CPA (and bad faith) causation prong is another reason the Court should permit an interlocutory appeal of its coverage and defense rulings.

PLAINTIFFS' COMBINED RESPONSE TO THE INSURERS'
SUMMARY-JUDGMENT MOTIONS ON REMAINING CLAIMS- 23
46133-013 \ 2306198.docx

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

to determine what amount of Cow Palace's expenses result from the Insurers' conduct.[40] Summary judgment is not appropriate.

## F.    Insurance Bad Faith

While Cow Palace cannot pursue its bad-faith claim asserting that Cow Palace engaged in bad faith by failing to narrowly construe Washington's case law in the insured's favor to find a duty to defend and pay for the CARE Litigation claims, Cow Palace can pursue a bad-faith claim alleging that the Insurers failed to reasonably investigate and handle Cow Palace's tendered claims, including failing to mediate issues relating to coverage and defense.[41]

Washington law requires insurers to "practice honesty and equity in all insurance matters."[42] An insurer must give equal consideration in all matters to the insured's

---

[40] *Id.* at 332 ("Damages for loss of professional reputation are not the type of damages which can be proved with mathematical certainty and are usually best left as a question of fact for the jury.").

[41] *See St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 165 Wn.2d 122, 132 (1984) ("[T]he duty of good faith is broad and all-encompassing, and is not limited to an insurer's duty to pay, settled, or defend.").

[42] RCW 49.01.030.

PLAINTIFFS' COMBINED RESPONSE TO THE INSURERS' SUMMARY-JUDGMENT MOTIONS ON REMAINING CLAIMS- 24
46133-013 \ 2306198.docx

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

interests.[43] "Good conscience and fair dealing [require] that the company pursue a course that [is] not advantageous to itself while disadvantageous to its policyholder."[44] This duty permeates the entire insurance arrangement and sounds in tort.[45] The insured must establish the breach of the duty of good faith and damages caused by the breach of the duty.[46]

Similar to the environmental-claims-handling CPA claims above, there are genuine issues of material fact as to whether the Insurers engaged in bad faith in administering the claim, including by failing to advise Cow Palace of its right to have a mediator resolve or narrow coverage issues and whether the Insurers sufficiently handled the claim while considering the public-policy considerations set forth in the environmental-insurance regulations. At a minimum, further discovery is needed to determine whether the Insurers failed to honestly and equitably treat Cow Palace or whether it turned a blind eye to their responsibilities under these insurance regulations and otherwise put its interests before that of its insured.

---

[43] *St. Paul Fire & Marine Ins. Co.*, 165 Wn.2d at 131; *Tank v. State Farm Fire & Casualty Co.,* 105 Wn.2d 381, 385–86 (1986).

[44] *Tank*, 105 Wn.2d at 391 (citations omitted).

[45] *St. Paul Fire & Marine Ins. Co.*, 165 Wn.2d at 129.

[46] *Id.* at 130.

PLAINTIFFS' COMBINED RESPONSE TO THE INSURERS'
SUMMARY-JUDGMENT MOTIONS ON REMAINING CLAIMS- 25
46133-013 \ 2306198.docx

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

If a breach occurred, this breach was not reasonable as Washington's environmental-claims-handling regulations were adopted in 1995—over 20 years ago. And according to the Insurers, this was a clear case where liability was precluded by the absolute pollution exclusion; otherwise, coverage was to be construed in Cow Palace's favor.[47] There is no evidence produced by the Insurers though that identifies or explains whether they satisfied their responsibilities under Washington's environmental-claims-handling regulations.

Similar to the CPA causation analysis above, the Insurers cannot benefit from the speculation caused by their breaches. The Court should apply a presumption of harm if bad faith is found. At a minimum, however, it is for the jury to decide 1) what harm was caused by the Insurers failure to advise Cow Palace of the ability to have a mediator resolve or narrow coverage issues, 2) whether and how the Insurers handling of the claims may have been altered if they had fully considered the public policies required by these regulations, 3) whether the insurers otherwise mishandled administration of the claim, and 4) whether such failures impacted the attorney's fees and costs and other expenses incurred by Cow Palace.

### III.  CONCLUSION

The Insurers cannot interpret the absolute pollution exclusion in their favor and then argue that they fully complied with Washington's environmental-claims-handling

---

[47] *Kirk*, 134 Wn.2d at 560-61.

PLAINTIFFS' COMBINED RESPONSE TO THE INSURERS' SUMMARY-JUDGMENT MOTIONS ON REMAINING CLAIMS- 26

46133-013 \ 2306198.docx

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

regulations when there is no evidence that the Insurers considered or complied with these regulations. The Insurers failed to satisfy their summary-judgment burden of production and persuasion as to Cow Palace's CPA and bad-faith claims based on the Insurers' failure to honor Washington's environmental-claims-handling regulations. Further, summary judgment on the remaining claims is neither fair nor efficient until the Ninth Circuit has reviewed the Court's coverage and defense rulings, or discovery has been completed. At a minimum, the Court should deny the Insurers' summary-judgment motions as to Cow Palace's CPA and bad-faith claims based on Washington's environmental-claims-handling regulations.

DATED this 15th day of November, 2017.

STOKES LAWRENCE, P.S.


By: _____/s/Bradford J. Axel_____
　　　　　Bradford J. Axel (WSBA #29269)
　　　　　Erika Hartliep (WSBA #33277)
　　　　　Krista L. Nelson (WSBA #45454)
　　　　　Attorney for Plaintiffs
　　　　　1420 Fifth Avenue, Suite 3000
　　　　　Seattle, Washington 98101-2393
　　　　　Telephone:  (206) 626-6000
　　　　　Fax:  (206) 464-1496
　　　　　Email: BJA@stokeslaw.com
　　　　　Email: ENH@stokeslaw.com
　　　　　Email: KLN@stokeslaw.com

PLAINTIFFS' COMBINED RESPONSE TO THE INSURERS'
SUMMARY-JUDGMENT MOTIONS ON REMAINING CLAIMS- 27
46133-013 \ 2306198.docx

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

# **CERTIFICATE OF SERVICE**

I hereby certify that on November 15, 2017, I caused the foregoing to be:

☒    electronically filed with the Clerk of the Court using the CM/ECF system which
will send notification of such filing to the following:

Karen Southworth Weaver
Misty Edmundson
SOHA & LANG, P.S.
1325 Fourth Avenue, Suite 2000
Seattle, WA 98101-2570
Telephone:  206-624-1800
Facsimile:  206-624-3585
Email:  weaver@sohalang.com
Email:  edmundson@sohalang.com
*Attorneys for Defendants QBE Insurance*
*Corporation and Unigard Insurance*
*Company*

Michael McCormack
Bullivant Houser Bailey
1700 7th Avenue, Suite 1810
Seattle, WA 98101
Tel: (206) 521-6425
Fax: (206) 386-5130
Email:
michael.mccormack@bullivant.com
*Attorneys for Defendants Bedivere*
*Insurance Company f/k/a OneBeacon and*
*Armour Risk Management, Inc.*

*/s/ Bradford J. Axel*
Bradford J. Axel (WSBA #29269)

PLAINTIFFS' COMBINED RESPONSE TO THE INSURERS'
SUMMARY-JUDGMENT MOTIONS ON REMAINING CLAIMS- 28
46133-013 \ 2306198.docx

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000