BRADFORD J. AXEL (WSBA #29269)
KRISTA L. NELSON (WSBA #45454)
ERIKA HARTLIEP (WSBA #33277)
STOKES LAWRENCE, P.S.
1420 Fifth Avenue, Suite 3000
Seattle, Washington 98101-2393
(206) 626-6000

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| THE DOLSEN COMPANIES, a Washington Corporation, COW PALACE, LLC, a Washington Limited Liability Company, THREE D PROPERTIES, LLC, a Washington Limited Liability Company,<br><br>Plaintiffs,<br><br>v.<br><br>BEDIVERE INSURANCE COMPANY f/k/a ONEBEACON, A Pennsylvania Corporation, ARMOUR RISK MANAGEMENT, INC., a Pennsylvania Corporation, QBE INSURANCE CORPORATION, a Pennsylvania corporation, UNIGARD INSURANCE COMPANY, a Washington corporation,<br><br>Defendants. | Case No.: 1:16-cv-3141 TOR<br><br>PLAINTIFFS' OPPOSITION TO INSURERS' MOTION TO DISMISS |

PLAINTIFFS' OPPOSITION TO INSURERS' MOTION TO DISMISS - 1

46133-013 \ 2276052

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

# I. INTRODUCTION

For over five years, Cow Palace[1] has sought insurance benefits related to the CARE Litigation under the respective policies issued by the Defendant Insurers. Cow Palace first tendered in February 2013 and again requested benefits under the policies in a series of communications both before and after the CARE Litigation Consent Decree was executed in May 2015. After years of failed efforts and expending millions of dollars on pollution cleanup activities, Cow Palace was ultimately forced to commence this lawsuit in June 2016.

Despite notice of the CARE Litigation, CARE Litigation Consent Decree, and Cow Palace's claim for insurance benefits, the Insurers failed to disclose first-party benefits to their quasi-fiduciary. This Court already found the Insurers "willfully withheld knowledge of potential first party coverage," ECF No. 137, but in an effort to excuse this fact, the Insurers now move to dismiss Cow Palace's first-party claims on the grounds that no justiciable controversy exists because Cow Palace has suffered no injury and no duties have been triggered under the policies.

The Insurers' argument is nonsensical at best, and at worst evidence of their continued bad-faith attempts to trap Cow Palace in a catch-22 that would preclude Cow Palace from ever recovering policy benefits under different coverage parts, which is certainly not what Washington law provides. Indeed, Washington law *affirmatively*

---

[1] "Cow Palace" collectively refers to all Plaintiffs.

PLAINTIFFS' OPPOSITION TO INSURERS' MOTION TO DISMISS - 2
46133-013 \ 2276052

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

*requires* insurers to fully disclose all pertinent benefits and construe policies in favor of coverage.

The Court should deny QBE Insurance Corporation and Unigard Insurance Company's Motion to Dismiss First-Party Claims, ECF No. 136, which has been joined by Bedivere Insurance Company. ECF No. 139.

## II.  FACTUAL BACKGROUND

On January 10, 2018, the Court granted Cow Palace's Motion to Compel and ordered the Insurers to produce wrongfully withheld documents. ECF No. 120. The produced documents revealed that the Insurers "willfully withheld knowledge of potential first-party coverage." ECF No. 137. In light of this development, the Court permitted Cow Palace to file a second amended complaint that added claims based on first-party coverage provisions. ECF No. 123. It was necessary for the Court to make this determination, given that the Insurers would not consent to an amended complaint because they contended it was "unnecessary" in order for Cow Palace to proceed with its claims. ECF No. 127-4 at 2.

Cow Palace's Second Amended Complaint ("SAC") alleges facts with respect to Cow Palace's initial tender to the Insurers in February 2013. ECF No. 125 ¶ 19. The SAC also alleges specific facts relating to the additional communications Cow Palace had with the Insurers, in which the Insurers—with knowledge of the existence of first-party coverage—failed to disclose first-party coverage. *Id.* ¶¶ 20-23. The SAC also

PLAINTIFFS' OPPOSITION TO INSURERS' MOTION TO DISMISS - 3

46133-013 \ 2276052

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

details Cow Palace's cleanup activities under the CARE Litigation Consent Decree, and that the Insurers denied all coverage. *Id.* ¶¶ 25, 31-32.

After Cow Palace amended its complaint and timely supplemented its Rule 26(a) disclosures with evidence related to its first-party insurance claims, the Insurers moved to sanction Cow Palace or continue the trial date in the alternative. ECF Nos. 126 & 130. The Insurers' motions acknowledged the Insurers' receipt of the expenses related to Cow Palace's extraction of pollutants; indeed, the new evidence served as the *entire basis* for the Insurers' motions and their request for a six-month trial continuance. *See, e.g.*, ECF No. 126 at 5, 11.

The Insurers now assert that Cow Palace lacks standing to bring the claims in the SAC because no justiciable controversy exists with respect to Cow Palace's first-party claims and no duties have been triggered under the policies. Their motion should be denied.

### III. LEGAL ARGUMENT

First, this Court has subject matter jurisdiction over the first-party insurance claims. Cow Palace has standing to assert these claims because there is an actual dispute between Cow Palace and its Insurers over first-party claims and the Insurers' duties have been triggered. Second, Cow Palace's first-party breach of contract claim and bad faith claim under WAC 284-30-940 are sufficiently pled.

PLAINTIFFS' OPPOSITION TO INSURERS' MOTION TO DISMISS - 4

46133-013 \ 2276052

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

**A.  Cow Palace has standing to bring claims for the wrongful denial of insurance coverage and wrongful claims handling.**

A plaintiff has standing to assert a claim if (1) the plaintiff suffered an actual or imminent injury; (2) there is a causal connection between the injury and the conduct complained of; and (3) that injury will likely be redressed by a favorable decision. *Price v. Akaka*, 3 F.3d 1220, 1224 (9th Cir. 1993) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992)). If a plaintiff is the object of the action at issue—as opposed to challenging government action or inaction with respect to someone else—there is ordinarily little question that the action or inaction has caused his or her injury for purposes of standing. *Id.* (distinguishing *Lujan* because case did not involve a suit against the government, but rather a plaintiff who was the object of the action at issue).

There is no question Cow Palace suffered actual injury giving rise to its first-party claims and that the injury was caused by the Insurers. Cow Palace tendered in February 2013 and has yet to receive any benefits under the respective policies. ECF No. 125 ¶¶ 31-32. To date, Cow Palace has incurred millions of dollars in expenses it believes to be pollution extraction costs under the policy language, and it provided those expenses to the Insurers. ECF No. 142. Indeed, the Insurers have acknowledged receipt of these expenses, and even made them a part of the record. *Id.* However, the Insurers maintain there is no first-party coverage. ECF No. 141 at 9-10. This demonstrates an actual and concrete injury, and the presence of an justiciable controversy.

PLAINTIFFS' OPPOSITION TO INSURERS' MOTION TO DISMISS - 5

46133-013 \ 2276052

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

Moreover, the Court has already recognized that insurers commit bad faith and violate WAC 284-30-350 if they fail to disclose coverage available under a policy part, even if the insured's tender was for coverage under a different part. *See* ECF No. 120 at 3 (citing *Anderson v. State Farm Mut. Ins. Co.*, 101 Wn. App. 323, 326-28, 2 P.3d 1029 (2000)). The Insurers' failure to disclose first-party coverage gives rise to justiciable first-party claims.

The Insurers attempt to frame this case as one in which Cow Palace failed to tender, but Cow Palace tendered over five years ago. Moreover, the Insurers' reliance on cases in which the insureds never tendered a claim are misplaced. For example, in *Forest Glade Homeowners Association v. Allied Mutual Insurance Co.*, the insured filed an amended complaint that added State Farm Insurance as a defendant *three days before* State Farm first received notice of *any* request for insurance coverage. 2009 WL 927750 *1 (W.D. Wash. Mar. 31, 2009). Similarly, in *Ohio Security Insurance Co. v. Axis Insurance Co.*, the insured *never* tendered a claim to Axis, one of its insurers. 2017 WL 1710987 *6 (W.D. Wash. May 3, 2017). As such, Ohio Security Insurance Company had no equitable contribution claim against Axis. *Id.* In contrast, this is not a case in which the insured filed suit against its insurance company prior to notice of the claim or failed to tender at all. Just the opposite, this is a case in which the Insurers had several years notice of the situation their insured faced and consistently resisted and concealed coverage.

PLAINTIFFS' OPPOSITION TO INSURERS' MOTION TO DISMISS - 6
46133-013 \ 2276052

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

1. **A substantial controversy exists for purposes of declaratory judgment.**

In addressing whether there is an actual controversy for purposes of a declaratory judgment action, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). The Ninth Circuit has "consistently held that a dispute between an insurer and its insureds over the duties imposed by an insurance contract satisfies Article III's case and controversy requirement." *GEICO v. Dizol*, 133 F.3d 1220, 1222 n.2 (9th Cir. 1998) (citing cases). Here, there is a substantial controversy between Cow Palace and the Insurers with respect to first-party coverage. In fact, this Court has already acknowledged Cow Palace's first-party claims and granted Cow Palace leave to add them to the case. ECF Nos. 123, & 137 at 2. As recognized by the Ninth Circuit, courts do not dismiss cases for lack of subject matter jurisdiction under these circumstances. *GEICO*, 133 F.3d at 1222 n.2. Cow Palace's first-party declaratory judgment action is ripe and there is nothing speculative or premature about it.

2. **The Insurers' duties under the policies have been triggered and Cow Palace's breach of contract, bad faith, IFCA, and CPA claims are ripe.**

Cow Palace's breach of contract, bad faith, Insurance Fair Conduct Act (IFCA), and Consumer Protection Act (CPA) claims against the Insurers based on first-party coverage are also ripe. The fact the Insurers maintain these claims are unripe because

PLAINTIFFS' OPPOSITION TO INSURERS' MOTION TO DISMISS - 7

46133-013 \ 2276052

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

they have no duties under the first-party coverage provisions of the policies is simply baffling.

Again, it is undisputed that Cow Palace notified the Insurers of its claim for insurance policy benefits as early as February 2013. ECF No. 74 at 8; ECF No. 136 at 2. Cow Palace then engaged in a series of communications from that time until it was ultimately forced to file this lawsuit for benefits under the respective policies in 2016. ECF No. 125 ¶¶ 19-23. Moreover, the Insurers have been in receipt of the CARE Litigation Consent Decree for years and expressly stated they had no duty to indemnify Cow Palace in relation to the Consent Decree. *See, e.g.*, ECF No. 141 at 5 ("QBE reviewed the Consent Decree to determine whether there was any covered loss.") (citing ECF No. 74 Ex. P).[2] Finally, the Insurers acknowledged receipt of Cow Palace's expenses for pollution extraction. In fact, they brought a motion on the subject, and used it as a basis to request sanctions or a trial continuance. ECF Nos. 126 & 130. Yet for

---

[2] The Insurers mistakenly allege that "On October 31, 2013, QBE inquired whether plaintiffs were tendering either defense or indemnity for their obligations under the consent decree" and that Cow Palace did not respond. ECF No. 136 at 2. In reality, QBE inquired about the EPA Order on Consent at that time, and whether Cow Palace had tendered defense or indemnity as it related to the EPA action. ECF No. 101-4 at Ex. B. 242. The letter made no mention of the CARE Litigation and did not notify Cow Palace about first-party coverage.

PLAINTIFFS' OPPOSITION TO INSURERS' MOTION TO DISMISS - 8
46133-013 \ 2276052

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

some reason, the Insurers maintain in their briefing that "plaintiffs . . . have not submitted any expenses to QBE related to the extraction of pollutants." ECF No. 136 at 15. The Insurers cannot escape their obligations to Cow Palace when it is clear the Insurers' duties have been triggered. Their efforts to do so now are evidence of their bad-faith handling of Cow Palace's claim.

While the Insurers argue Cow Palace never tendered a claim for first-party coverage, they point to no policy language specific to tender of a claim with which Cow Palace did not comply. Neither "tender" nor "claim" are defined terms in the relevant portions of the policies, and thus, they must be given their plain, ordinary, and popular meaning. *Boeing Co. v. Aetna Cas. & Sur. Co.*, 113 Wn.2d 869, 877, 784 P.2d 507 (1990). In this case, it is clear that Cow Palace affirmatively and repeatedly asked for benefits under the respective policies, and the Insurers concede Cow Palace did so as early as February 2013. Moreover, the Insurers' own documents show that as early as 2013 they were aware that first-party coverage was an issue; they simply concealed that awareness from their insureds.

Similarly, the Insurers cannot escape their duties under the policies by relying on technical policy language regarding notice of a claim. First, whether Cow Palace complied with certain policy conditions is not the proper subject of a motion to dismiss for lack of subject matter jurisdiction. Under Washington law, whether an insured's failure to comply with a policy condition excuses the insurer from any obligations under

PLAINTIFFS' OPPOSITION TO INSURERS' MOTION TO DISMISS - 9
46133-013 \ 2276052

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

the policy is a question of fact. *Pulse v. Nw. Farm Bureau Ins. Co.*, 18 Wn. App. 59, 62 (1977). Moreover, the insurer will only be excused from its obligations under the policy if it can affirmatively prove it was prejudiced. *Id.*

Nonetheless, even if Cow Palace was required to "submit a written report to QBE detailing the expenses incurred related to the extraction of pollutants from land or water at an insured location caused by a covered loss during the policy period within 180 days of the date of [sic] the covered loss occurred," ECF No. 136 at 8, the Insurers ignore their specific duties under Washington law with respect to these policy provisions.

Under applicable insurance regulations, "Upon receiving *notification* of a claim, every insurer must promptly provide necessary claim forms, instructions, and reasonable assistance so that first party claimants can comply with the policy conditions and the insurer's reasonable requirements." WAC 284-30-360(4) (emphasis added). In this case, not only did the Insurers not notify Cow Palace of first-party coverage, but they also failed to provide the requisite forms they now attempt to penalize Cow Palace for failing to complete. Moreover, Cow Palace has provided the Insurers with detailed expenses related to their claim. The Insurers cannot rely on these policy provisions to argue no duties have been triggered under the policies.

Finally, this Court has jurisdiction over Cow Palace's first-party IFCA claim. It is undisputed that Cow Palace provided an IFCA notice. ECF No. 136 at 12; ECF No. 74 at 100. IFCA simply requires "written notice of the basis for the cause of action . . . ."

PLAINTIFFS' OPPOSITION TO INSURERS' MOTION TO DISMISS - 10

46133-013 \ 2276052

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

RCW 48.30.015(8)(a). Cow Palace's IFCA notice does just that by articulating the causes of action. ECF No. 74 at 100. The causes of action set forth in the IFCA notice are supported by underlying facts specifically alleged in the SAC that relate to both first-party and third-party claims. *See* ECF No. 125.

Cow Palace's breach of contract, bad faith, IFCA, and CPA claims are ripe.

**B.  Cow Palace's first-party breach of contract claim and bad-faith claim under WAC 284-30-940 are properly pled.**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Cow Palace properly pled its first-party breach of contract claim, along with its WAC 284-30-940 bad-faith claim.

   **1.  Cow Palace's first-party breach of contract claim is properly pled.**

Cow Palace's first party breach of contract claim is properly pled. The SAC specifically alleges that "Each of the Policies, other than CU105296, provides coverage for extracting 'pollutants' at each insured location." ECF No. 125 ¶ 8. The SAC also alleges that Cow Palace spent hundreds of thousands of dollars complying with the CARE Litigation Consent Decree and extracting manure, nitrates, and phosphates. *Id.* ¶¶ 25, 33. The SAC further alleges that Defendants "breached the terms of the Policies by refusing to provide first-party coverage benefits." ECF No. 125 ¶ 40. While the Insurers argue insufficient facts with respect to whether the events were a covered loss,

PLAINTIFFS' OPPOSITION TO INSURERS' MOTION TO DISMISS - 11
46133-013 \ 2276052

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

1  Cow Palace's SAC clearly articulates the extraction activities and identifies that
2  pollution was asserted during the policy periods. *Id.* ¶ 18 ("[T]he over-application of
3  liquid manure above agronomic rates has been ongoing since the date the Cow Palace
4  Dairy was brought into operation and has been continuous for at least five years.").
5  These facts are sufficient allegations of a covered cause of loss under the policies.

6  Finally, the Court should reject the Insurers' attempt to preclude Cow Palace from
7  seeking first-party coverage for pollution clean-up costs simply because Cow Palace
8  earlier sought liability coverage on the basis that manure was not a "pollutant" for
9  purposes of the policies. Cow Palace's position is not "nonsensical," ECF No. 136 at
10 15, as the Insurers posit. Nothing prevents Cow Palace from seeking benefits under
11 different provisions of the policies after this Court ruled that manure is not a "pollutant"
12 for purposes of liability coverage. Under the Insurers' theory, Cow Palace would
13 effectively need to choose between one coverage part at the exclusion of the other,
14 which is not what Washington law provides.

15  **2.    Bad faith exists under WAC 284-30-940.**

16  Cow Palace previously briefed the legal basis for its third-party bad faith claim
17 based on the Insurers' failure to comply with the requirements of WAC 284-30-940 in
18 opposition to the Insurers' motions for summary judgment. ECF No. 95. Cow Palace
19 relies on that argument in opposition to the Insurers' Motion to Dismiss. Furthermore,
20 the Insurers' failures under WAC 284-30-940 interplay with their failures under the

21

PLAINTIFFS' OPPOSITION TO INSURERS' MOTION TO
DISMISS - 12
46133-013 \ 2276052

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

Washington insurance claims-handling regulations, including failing to disclose to Cow Palace all pertinent benefits, coverages, or other provisions of the insurance policies and related claims-handling process. *See Merriman v. Am. Guar. & Liab. Ins. Co.*, 198 Wn. App. 594, 615, 396 P.3d 351 (2017); *Anderson*, 101 Wn. App. at 326-28. Given the nature of the claim and circumstances, the Insurers were required by Washington law to disclose to Cow Palace that it could request mediation to resolve coverage issues. The Insurers' motion to dismiss should be denied in this regard.

## IV. CONCLUSION

Cow Palace has sought insurance benefits from its insurers for over five years, since it first notified its insurers of its claim in February 2013. There is no doubt that an actual controversy exists between Cow Palace and its insurers and that Cow Palace's first-party claims are ripe. The Court should deny the Insurers' Motions to Dismiss.

DATED this 13th day of April, 2018.

        STOKES LAWRENCE, P.S.
        By: /s/ Bradford J. Axel
           Bradford J. Axel (WSBA #29269)
           Krista L. Nelson (WSBA #45454)
           Erika Hartliep (WSBA #33277)
           Attorney for Plaintiffs
        STOKES LAWRENCE, P.S.
        1420 Fifth Avenue, Suite 3000
        Seattle, Washington 98101-2393
        Telephone: (206) 626-6000
        Fax: (206) 464-1496
        Email: bja@stokeslaw.com
        krista.nelson@stokeslaw.com
        enh@stokeslaw.com

PLAINTIFFS' OPPOSITION TO INSURERS' MOTION TO DISMISS - 13
46133-013 \ 2276052

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

# CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2018, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Misty Edmundson<br>Jennifer P. Dinning<br>Soha & Lang, P.S.<br>1325 4th Ave., Ste. 2000<br>Seattle, WA 98101<br>Telephone: 206-624-1800<br>Facsimile: 206-624-3585<br>Email:<br>edmundson@sohalang.com<br>dinning@sohalang.com<br>*Attorneys for Defendants QBE Insurance Corporation and Unigard Insurance Company* | Michael A. Guadagno<br>Michael McCormack<br>Holly D. Brauchli<br>Bullivant Houser Bailey PC<br>1700 Seventh Avenue, Suite 1810<br>Seattle, WA 98101<br>Tel: (206) 521-6425<br>Fax: (206) 386-5130<br>Email:<br>michael.guadagno@bullivant.com<br>michael.mccormack@bullivant.com<br>holly.brauchli@bullivant.com<br>*Attorneys for Defendants Bedivere Insurance Company f/k/a OneBeacon and Armour Risk Management, Inc.* |

/s/ Bradford J. Axel
Bradford J. Axel (WSBA #29269)

PLAINTIFFS' OPPOSITION TO INSURERS' MOTION TO DISMISS - 14
46133-013 \ 2276052

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000